# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DONEVA LITTLEFIELD, BRIAN LITTLEFIELD,
Individually and o.b.o. minor son, "RAL",

      Plaintiffs,

v.                                    No. CIV 15-177 RB/SCY

PIEDRA VISTA HIGH SCHOOL
ADMINISTRATION, FARMINGTON
MUNICIPAL SCHOOLS ADMINISTRATION,
ATHLETIC DIRECTOR KELLY THUR,
Individually and in his Official Capacity, and
WRESTLING COACH LEVI STOUT,
Individually and in his Official Capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs Doneva Littlefield and Brian Littlefield brought this suit on behalf of their minor son, "RAL."  Plaintiffs claim that Defendants,[1] all associated with Piedra Vista High School, violated RAL's constitutional rights by suspending him from participating in interscholastic wrestling competitions.  In the first motion to dismiss, Defendants School District and Kelly Thur move to dismiss the two claims against them.  (Doc. 11.)  In the second motion to dismiss, Defendant Levi Stout moves to dismiss the claim against him.  (Doc. 32.)  Having reviewed the parties' submissions and arguments, the Court **GRANTS** both motions (Docs. 11, 32).

---

[1] The parties agree that the three properly named Defendants are the Board of Education for the Farmington Municipal School District ("School District"), Defendant Kelly Thur, and Defendant Levi Stout.  (Doc. 11 at 1 n.1; Doc. 24 at 2.)

# I.      BACKGROUND

RAL is a talented young wrestler who regularly competed, but was not associated with a particular school's program or roster.  (Am. Compl. ¶¶ 8-9.)  During a summer wrestling program in 2013, RAL trained with Defendant Levi Stout, the wrestling coach at Piedra Vista High School.  (*Id.* ¶¶ 6, 10.)  RAL, who was only in eighth grade, was not a student at Piedra Vista High School.  (*Id.* ¶ 7.)

On December 23, 2013, Defendant Stout invited RAL to compete with Piedra Vista's wrestling team as a detached competitor at a tournament in Reno, Nevada.  (*Id.* ¶ 11.)  Defendant Stout said he would complete the online registration on RAL's behalf and Plaintiffs paid the entrance fee to Defendant Stout.  (*Id.* ¶ 12.)  Defendant Stout did not provide Plaintiffs with copies of the registration documents.  (*Id.* ¶ 13.)  On December 25, 2013, RAL met Defendant Stout, other student-competitors, and chaperones at Piedra Vista High School, where the group traveled together to Reno.  (*Id.* ¶ 15.)  RAL's parents did not attend.

RAL weighed in for the competition on December 27, 2013.  (*Id.* ¶ 17.)  Prior to his first match, RAL sent his parents a text message disclosing that Defendant Stout had not registered RAL to play under his own name, but was asking RAL to compete under the name of an absent Piedra Vista student.  (*Id.*)  According to Plaintiffs, Defendant Stout asked one other student to compete under a false name at the same competition.  (*Id.* ¶ 19.)  Apparently, two of Piedra Vista's wrestling team members were deemed ineligible shortly before the competition and Defendant Stout asked RAL and the second student to take their places.  (*Id.* ¶ 21.)  Wrestling under a false name is a violation of the New Mexico Activities Association's rules and regulations.  (*Id.* ¶ 20.)  Plaintiffs believed their son to be in a precarious situation: their fourteen-

year old son was in another state and had no one to trust other than Defendant Stout.  (*Id.* ¶¶ 7, 22-23.)  Plaintiffs advised RAL to finish the competition.  (*Id.* ¶ 24.)

In February 2014, concerned Piedra Vista parents reported to Defendant Kelly Thur, Piedra Vista's Athletic Director, that RAL and the other wrestler violated the New Mexico Activities Association's rules by competing under false names.  (*Id.* ¶ 25.)  Defendant Thur conducted several interviews, but did not interview, notify, or contact Plaintiffs.  (*Id.* ¶¶ 26-27.)  Based on his investigation, Defendant Thur wrote a letter to the New Mexico Activities Association reporting that RAL and another student competed under false names.  (*Id.* ¶ 28.)  Defendant Thur's report also accused Defendant Stout of serious misconduct.  (*Id.* ¶ 34.)  On the same day that Defendant Thur sent his report, Defendant School District declined to renew Defendant Stout's employment contract.  (*Id.* ¶ 35.)

All student athletes in the State of New Mexico are subject to the rules and regulations set by the New Mexico Activities Association.  (*Id.* ¶ 42.)  Students who fail to abide by the rules can be suspended, declared ineligible, or otherwise disciplined.  (*Id.*)  Local school districts are responsible for enforcing the Activities Association's rules.  (*Id.*)  Two weeks after sending his findings to the Activities Association, Defendant Thur sent a letter to Plaintiffs informing them that based on RAL's misconduct, RAL would be ineligible to complete in any New Mexico Activities Association athletic competition for a period of 180 school days.  (*Id.* ¶ 28, 30.)

Plaintiffs immediately appealed this decision to the New Mexico Activities Association.  (*Id.* ¶¶ 31, 32.)  The Appeals Board reversed the ineligibility decision against RAL on April 29, 2014.  (*Id.* ¶ 32.)  Later, in June, the Appeals Board upheld sanctions against Defendant Stout.  (*Id.* ¶¶ 32, 36.)

After Defendant Stout was asked to leave Piedra Vista High School, Plaintiffs felt ostracized by the local school and wrestling communities.  (*Id.* ¶ 46.)  Despite his misconduct, Defendant Stout still had local support.  (*Id.* ¶¶ 46-48.)  Because of the harassment by the community, Plaintiffs were forced to move to a new school district.  (*Id.* ¶¶ 49, 51.)  RAL's grades and health suffered due to the pressure.  (*Id.* ¶¶ 52-53.)  Plaintiffs also fear that the incident negatively impacted RAL's college scholarship opportunities.  (*Id.* ¶ 54.)

On March 2, 2015, Plaintiffs filed a complaint with the State of New Mexico, San Juan County, Eleventh Judicial District Court. (Doc. 1-1.)  Defendants timely removed. (Doc. 1.)  On March 16, 2015, Plaintiffs amended their Complaint to assert only three claims, all brought under the Fourteenth Amendment.  (Am. Compl.)  The Amended Complaint dropped all the state law claims.  (*Id.*)  Defendants now seek dismissal of the constitutional claims.  (Doc. 11.)

## II.    LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6), a "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing the sufficiency of a complaint, the court must first identify the factual allegations and disregard any conclusory statements.  *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Next, the court must determine if the claimant's factual allegations state a plausible claim.  *Id.*  The complaint must have "enough factual matter (taken as true) to suggest that [the claimant] is entitled to relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III.      DEFENDANTS THUR'S AND SCHOOL DISTRICT'S MOTION TO DISMISS

Plaintiffs bring two claims against Defendants School District and Thur, both under the Fourteenth Amendment.   Specifically, Plaintiffs allege that Defendants violated RAL's substantive and procedural due process rights.  Defendants ask the Court to dismiss both claims.

A.  Substantive Due Process

A plaintiff's right to substantive due process is violated when government action either (1) infringes upon a fundamental right or (2) shocks the conscience.  *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).   Plaintiffs have not alleged an interference with a fundamental right.  Fundamental rights are either enumerated in the Bill of Rights or are so "deeply rooted in this Nation's history and tradition . . . such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). In *San Antonio Independent School District v. Rodriguez*, the Supreme Court found that the Constitution does not protect the right to education.  411 U.S. 1, 35 (1973).  After *Rodriguez*, a plaintiff could, in theory, allege a violation of a fundamental right if the government "occasioned an absolute denial of educational opportunities" to a child.  *Id.* at 37.  The facts of this case, as Plaintiffs alleged them to be, do not support such a theory.  Plaintiffs must instead prove that Defendants' actions were conscience-shocking.

The "conscience shocking" standard sets a high bar, only encompassing "the most egregious official conduct."  *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (internal citations and quotations omitted); *see also Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995) ("[T]he 'shock the conscience' standard requires a high level of outrageousness.").  Substantive due process sanctions conduct that was "inspired by malice or sadism rather than a merely careless or unwise excess of zeal . . . ."  *Harris v. Robinson*, 273 F.3d 927, 930 (10th Cir. 2001).

5

"[N]egligence is not sufficient" to shock the conscience of the court; indeed, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006).

Plaintiffs claim that Defendants Thur and School District acted egregiously when Defendant Thur investigated the misconduct at the wrestling tournament without interviewing RAL.  (Am. Compl. ¶ 65.)  Defendant Thur interviewed other participants at the tournament, but not RAL, who was not an enrolled student at Piedra Vista.  (*Id.* ¶¶ 7, 26.)  Notably, Plaintiffs do not deny that RAL did compete under a false name.  They only demur that Defendant Stout was ultimately responsible for the misconduct.  Plaintiffs consider Defendant Thur's recommended sanctions under the New Mexico Activities Association outrageous.  (*Id.*)

The Court does not find Defendant Thur's investigation or his recommended sanctions conscience-shocking.  Looking through the allegations, the Court finds nothing egregious, malicious, or sadistic about Defendant Thur's investigation or recommendation.  *See Williams*, 519 F.3d at 1220 (explaining that only "egregious" official misconduct is conscience-shocking); *Harris v. Robinson*, 273 F.3d at 930 (explaining that courts look for malice and sadism when considering conscience-shocking behavior).  Arguably, Defendant Thur should have spoken to Plaintiffs and asked if they had defenses to the undisputed misconduct.  However, neither poor judgment nor negligence is sufficient to sustain a substantive due process claim.  *See Camuglia*, 448 F.3d at 1222.  The Court dismisses this claim against Defendants Thur and School District.

### B.  Procedural Due Process

Plaintiffs contend that Defendants Thur and School District violated RAL's right to procedural due process when they temporarily suspended RAL from extracurricular sports

competitions without giving RAL a right to be heard.  (Am. Compl. ¶¶ 65-66.)  Plaintiffs concede that RAL had a post-deprivation hearing: Plaintiffs appealed the decision to the New Mexico Activities Association and won.  (*Id.* ¶¶ 31, 32.)  The sanctions against RAL were in place for less than a month.  (*Id.* ¶ 32.)  Yet RAL considers this process insufficient.  RAL contends that the nature of his rights required a pre-deprivation hearing.  (*Id.* ¶ 65.)

In order to state a claim for a violation of procedural due process, a "plaintiff must allege a deprivation of a sufficient property or liberty interest to invoke the protection of the Due Process Clause."  *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). "If a sufficient property interest is found, the government cannot deprive an individual of that interest without due process."  *Id.*  Unlike fundamental rights, the "the contours of a constitutional right" for the purposes of procedural due process "can be defined by state law . . . ."  *Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540-41 (1985)).

The New Mexico Constitution guarantees a free public education to "all the children of school age in the state . . . ."  N.M. Const. art. XII, § 1; *see also* N.M. Stat. Ann. § 22-1-4(A) ("[A] free public school education shall be available to any school-age person who is a resident of this state and has not received a high school diploma or its equivalent.").  The New Mexico Supreme Court construes this provision to protect "[o]nly those courses 'sufficient for the education'" of school children, defined as the "courses required of every student."  *Norton v. Bd. of Ed. of Sch. Dist. No. 16, Hobbs Mun. Sch.*, 553 P.2d 1277, 1278 (N.M. 1976).  In contrast, students do not have a right to elective courses.  *Id.*  This framework does not grant students a right to participate in sports competitions.  Plaintiffs do not point to any state law that grants RAL a property interest in participating in interscholastic sports.  Rather, the bylaws that

Plaintiffs attach to the Amended Complaint show that participation in interscholastic sports "is a privilege and not a right." (Am. Compl. Ex. C, NMAA Bylaws § 6.1.)

Plaintiffs cites to nonbinding authority for the proposition that RAL had a property interest in participating in interscholastic wrestling. (Doc. 24 at 8.) The Tenth Circuit, however, has squarely rejected the notion. In *Seamons v. Snow*, the Tenth Circuit found that students do not have "a constitutional right to [the] particular incidents of education." 84 F.3d 1226, 1234-35 (10th Cir. 1996) (citing *Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976)). Specifically, the Tenth Circuit ruled that "participation in athletics and membership in school clubs[] do not create a property interest subject to constitutional protection." *Id.* Nothing Plaintiffs cite surmounts this binding authority. The Court finds that none of RAL's constitutionally-protected property interests were infringed when he was temporarily suspended from wrestling competitions.

Plaintiffs next assert that RAL had a liberty interest in his reputation. (Am. Compl. ¶ 57.) In *Paul v. Davis*, the Supreme Court held that injury to reputation, by itself, is not a liberty interest protected by the Fourteenth Amendment. 424 U.S. 693, 710 (1976). In an attempt to overcome this obstacle, Plaintiffs claim that RAL is not merely asserting a reputational injury; he also claims that Defendants damaged his educational and economic futures. (Doc. 24 at 10; Am. Compl. ¶ 57.) Plaintiffs turn to *Goss v. Lopez* for support, claiming that Supreme Court found that misconduct charges can damage a students' reputation and future opportunities. (Doc. 24 at 10.) While the Supreme Court did discuss these potential consequences in *Goss*, the Supreme Court did not hold that students have protected liberty interests in reputations and future opportunities. *Goss v. Lopez*, 419 U.S. 565, 575 (1975). The only protected interest in *Goss* was the student's entitlement to a public education, granted by the Ohio Constitution. *Id.* at 573.

8

The alleged damages to RAL's educational and economic future do not bolster Plaintiffss' argument that RAL had a protected liberty interest in his reputation.  First of all, RAL had no constitutionally-protected right to attend a particular school or enroll in a particular school program.  *See Seamons*, 84 F.3d at 1234-35 (10th Cir. 1996) (finding that students have no constitutionally-protected right to take advanced placement classes or to attend a particular school).  Thus, his asserted right to educational opportunities was not violated.

Second, RAL's claims to college scholarships, economic futures, or "future employment opportunities are not 'sufficiently real and immediate to show an existing controversy.'"  *Doe v. Bagan*, 41 F.3d 571, 576 (10th Cir. 1994) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982)).  In *Bagan*, a student argued that he had a liberty interest in his school reputation plus future employment opportunities.  *Id.*  The Circuit rejected the argument, distinguishing the student's claim from public employees' claim.  *Id.*  Unlike public employees who may have a liberty interest in ongoing public employment contracts, students do not have a state-recognized or state-protected claim to future employment.  *Id.*  Similarly, Plaintiffs have not shown that Defendants prevented RAL from receiving a state-recognized entitlement to college scholarships.  Thus, Plaintiffs have not shown that any of RAL's protected interests were damaged by the temporary suspension.

Finally, Plaintiffs argue that "a program of interscholastic sports, after having been provided, must be administered without violation of the Fourteenth Amendment."  (Doc. 24 at 9.)  Plaintiffs allege that Defendants violated RAL's due process rights by failing to follow the requirements outlined in the New Mexico Activities Association's bylaws.  (*Id.*)  Even assuming that Defendants did violate the bylaws, that transgression by itself does not mean that Defendants violated constitutional law.  *See Nordlinger v. Hahn*, 505 U.S. 1, 26 (1992) ("A violation of state

law does not by itself constitute a violation of the Federal Constitution.").  This line of argument does not save Plaintiffs' due process claim.

Because Plaintiffs have not alleged that Defendants violated any of RAL's protected interests, they cannot maintain their procedural due process claim.  This claim is dismissed. Furthermore, Defendant Thur invoked the protection of qualified immunity.  (Doc. 11 at 10.) Because Plaintiffs did not show that Defendant Thur violated RAL's constitutional rights, Defendants Thur is entitled to qualified immunity.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (explaining two-pronged inquiry for qualified immunity); *see also Seamons v. Snow (Seamons II)*, 206 F.3d 1021, 1029-30 (10th Cir. 2000) (discussing school authorities' entitlement to qualified immunity).

## IV.   DEFENDANT STOUT'S MOTION TO DISMISS

Plaintiffs name Defendant Stout in both his individual and his official capacities.  In their Response, Plaintiffs concede that the official capacity suit is redundant and may be dismissed. (Doc. 36 at 20.)  The Court dismisses the claims against Defendant Stout in his official capacity. *See D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1227 (10th Cir. 2004) (affirming dismissal of official-capacity claim because the school district was a named defendant).  The Amended Complaint only asserts one claim against Defendant Stout: a violation of substantive due process.

As discussed above, to state a claim for substantive due process, a plaintiff must show that government action either (1) infringed upon his fundamental right or (2) was shocking to the conscience.  *Seegmiller*, 528 F.3d at 767.  Again, Plaintiffs claim that RAL had protected rights to compete in wrestling tournaments and in his reputation plus educational and economic opportunities.  (Am. Compl. ¶ 69.)  As explained above, these are not protected rights for the

purposes of procedural due process, let alone fundamental rights for the purposes of substantive

due process. *See Washington*, 521 U.S. at 720-21 (explaining that fundamental rights stem from

the Bill of Rights). Against Defendant Stout, Plaintiffs also asserted "a constitutionally protected

interest in [RAL's] personal liberty, health and safety . . . ." (Am. Compl. ¶ 70.) The Court

construes this as an assertion of a fundamental right to bodily integrity.

Bodily integrity is a recognized fundamental right. *See Washington*, 521 U.S. at 720.

The right to bodily integrity generally encompasses freedom from medical invasions into the

body, freedom from bodily restraint and punishment, and possibly freedom from sexual assault.

*See id.* at 777 (Souter, J., concurring) (explaining medical invasion constitutional tort precedent);

*Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977) (explaining the country's historical interest in

the freedom from bodily restraint and punishment); *Doe v. Taylor Independent School District*,

15 F.3d 443, 445 (5th Cir. 1994) (finding that sexual abuse violates the right to bodily integrity).

Plaintiffs have not alleged any conduct that suggests Defendant Stout physically harmed or

invaded RAL's body. None of the allegations support the theory that RAL's fundamental right

to bodily integrity was harmed.

Because Plaintiffs have not sufficiently alleged an interference with a fundamental right,

they must show that Defendant Stout's actions shocked the conscience. Again, "the 'shock the

conscience' standard requires a high level of outrageousness." *Uhlrig*, 64 F.3d at 574. For

example, in the school context, "corporal punishment may indeed constitute a violation of

substantive due process" when it is brutal enough to be "grossly excessive." *Garcia by Garcia v.*

*Miera*, 817 F.2d 650, 656 (10th Cir. 1987). In contrast, the Tenth Circuit said that a teacher's

decision to reprimand a mentally disabled student by forcing him to clean a clogged toilet with

his bare hands was not conscience-shocking, but merely showed "poor judgment." *See Harris v.*

11

*Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (finding no substantive due process violation).  In a second case, the Tenth Circuit found that a teacher's conduct did not shock the conscience when the teacher repeatedly called his sixth-grade female student "a prostitute" in front of the class and encouraged classmates' taunts for weeks.  *See Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1257-58 (10th Cir. 1996) (finding no substantive due process violation).

Plaintiffs allege that Defendant Stout violated RAL's rights by accompanying him on the out-of-state wrestling tournament, registering RAL under a false name, having him compete under a false name, and then representing after-the-fact that it was RAL's decision.  (Am. Compl. ¶ 71.)  The Court agrees that Defendant Stout's conduct was improper and potentially unlawful.  But "[w]hat differentiates a constitutional transgression from an ordinary common law tort is a 'level of executive abuse of power that shocks the conscience.'"  *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  The conduct here was not conscience-shocking.  The alleged facts do not exhibit the "degree of outrageousness and a magnitude of potential or actual harm" to satisfy the constitutional concept of conscience-shocking behavior.  *See id.* at 1221.

Because the facts as alleged do not state a claim for a violation of substantive due process, Defendant Stout's motion to dismiss is granted.  Because Plaintiffs did not show that Defendant Stout violated RAL's constitutional rights, Defendants Stout is entitled to qualified immunity.  *See Pearson*, 555 U.S. at 231.

## V.      CONCLUSION

Based on the alleged facts, RAL was wronged by Defendant Stout and the administration that supervised Defendant Stout.  RAL attempted to challenge the legality of Defendants' actions by asserting constitutional claims.  Yet, constitutional law only protects constitutional rights. The facts as alleged do not support a substantive due process or a procedural due process claim. Because Plaintiffs cannot show that RAL's constitutional rights were violated, Defendants Thur and Stout are entitled to qualified immunity.  For the above reasons, Defendants' Motions to Dismiss are granted.

**THEREFORE**,

**IT IS ORDERED** that:

(1)  Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 11) is

**GRANTED**; and

(2)  Defendant Levi Stout's Motion to Dismiss (Doc. 32) is **GRANTED**.

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE